USAO2017R00679/CAH/DVS

**FILED**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

OCT 2 4 2019

AT 8:30 ____ 4:05 PM
WILLIAM T. WALSH
CLERK   JB

| | |
|---|---|
| UNITED STATES OF AMERICA | : Hon. |
| | : |
| | : Criminal No. 19- Cr 780 (WJM) |
| v. | : |
| | : 15 U.S.C. §§ 78j(b) and 78ff |
| | : 17 C.F.R. §§ 240.10b-5 and 240.10b5-2 |
| GENE LEVOFF | : 18 U.S.C. §§ 1343 and 2 |

**INDICTMENT**

The Grand Jury in and for the District of New Jersey, sitting at

Newark, charges:

**COUNTS ONE THROUGH SIX**
(Securities Fraud)

**Relevant Individuals and Entities**

1.      At all times relevant to this Indictment:

a.      Company-1 was a global technology company

headquartered in Cupertino, California that designed, developed, and sold

consumer electronics, computer software, and online services.  Company-1 was

a publicly traded company whose securities were listed on the NASDAQ Stock

Market.

b.      Defendant GENE LEVOFF ("LEVOFF") was employed

by Company-1 at its headquarters in Cupertino.  From in or around 2008

through in or around 2013, LEVOFF, an attorney, was the Director of

Corporate Law at Company-1.  From in or around 2013 through September

2018, LEVOFF was the Senior Director of Corporate Law at Company-1.  In

that role, LEVOFF functioned as the top corporate attorney at Company-1, reporting directly to Company-1's General Counsel. Among other things, LEVOFF was responsible for overseeing Company-1's compliance with securities laws, which included advising others regarding U.S. Securities and Exchange Commission (the "SEC") filings and financial reporting. In or around February 2018, Company-1 named LEVOFF its Corporate Secretary, a title he maintained until September 2018. Before that, LEVOFF held the role of Assistant Secretary.

        c.     LEVOFF's responsibilities included ensuring compliance with Company-1's Insider Trading Policy. Company-1's Insider Trading Policy prohibited the unauthorized disclosure of any nonpublic information acquired in the work place and the misuse of material nonpublic information in securities trading ("Company-1's Insider Trading Policy").

        d.     From in or around September 2008 through in or around July 2018, LEVOFF served on Company-1's Disclosure Committee, and, as a result, had access to and obtained Company-1's draft SEC filings and earnings materials before Company-1 disclosed its quarterly and yearly financial results to the public. LEVOFF served as one of the Disclosure Committee's co-chairpersons from in or around December 2012 through in or around July 2018. As a Disclosure Committee member and high-ranking Company-1 employee, LEVOFF owed a fiduciary duty to Company-1 and its shareholders to protect the material nonpublic information regarding Company-1 to which he had access. LEVOFF further owed Company-1 and its

2

shareholders a duty not to use such material nonpublic information for his own personal benefit. Additionally, LEVOFF was subject to certain company-imposed "blackout periods" that prohibited him and others like him with access to material nonpublic information regarding Company-1 from engaging in trades involving Company-1 stock.

        e.    First Republic Securities Company, LLC ("First Republic") was a brokerage firm based in San Francisco, California that provided various investment services, including online investing. LEVOFF maintained an account with First Republic (the "First Republic Account") that he used, among other things, to buy and sell securities, including Company-1 stock.

        f.    TD Ameritrade was a brokerage firm based in Omaha, Nebraska that provided online investing services for institutions and individuals. LEVOFF maintained a brokerage account with TD Ameritrade (the "TD Ameritrade Brokerage Account") that he used, among other things, to buy and sell securities, including Company-1 stock.

        g.    Virtu Americas, LLC, f/k/a KCG Americas LLC, f/k/a Knight Capital Markets ("Virtu") was a market maker – i.e., a firm that stands ready to buy and sell a particular stock on a regular and continuous basis at a publicly quoted price, thus providing liquidity to the market. The servers that housed Virtu's electronic trading systems and executed trades involving those systems were located in New Jersey.

        h.      Susquehanna International Group, f/k/a G1 Execution Services, LLC ("G1") was a market maker.  The servers that housed G1's electronic trading systems and executed trades involving those systems were located in New Jersey.

        i.      BNY Mellon Capital Markets, LLC ("BNY Mellon") was a market maker.  The third-party affiliate servers that housed BNY Mellon's electronic trading systems were located in New Jersey.

        j.      Two Sigma Securities, LLC ("Two Sigma") was a market maker.  The servers that housed Two Sigma's electronic trading systems and executed trades involving those systems were located in New Jersey.

### The Insider Trading Scheme

        2.      From in or around February 2011 through in or around April 2016, LEVOFF orchestrated a scheme to defraud Company-1 and its shareholders by misappropriating material nonpublic information regarding Company-1's financial results in order to execute favorable trades involving the securities of Company-1.

### Goal of the Scheme

        3.      The goal of the insider trading scheme was for LEVOFF to enrich himself by obtaining money and avoiding losses by purchasing and selling Company-1 securities on the basis of material nonpublic information regarding Company-1 gained by LEVOFF through his position at Company-1.

## Manner and Means of the Insider Trading Scheme

4.      The manner and means by which LEVOFF accomplished the goal of the insider trading scheme included:

a.      LEVOFF used his position on Company-1's Disclosure Committee to obtain material nonpublic information regarding Company-1's financial results before Company-1 disclosed that information to the public.

b.      LEVOFF converted the material nonpublic information to his own use by executing trades involving Company-1 stock in the TD Ameritrade Brokerage Account and the First Republic Account before Company-1 disclosed its financial results to the public.  When LEVOFF discovered that Company-1 had strong revenue and net profit for a given financial quarter, he purchased large quantities of Company-1 stock, which he later sold for a profit after Company-1 disclosed the positive earnings information to the public and the market reacted to the news.  Conversely, when LEVOFF learned that Company-1 had lower-than-anticipated revenue and net profit, he sold large quantities of Company-1 stock, thus avoiding the significant losses that would occur after Company-1 disclosed the information to the public and the market reacted to the negative news regarding Company-1's earnings.

c.      LEVOFF executed, and caused to be executed, a number of trades, referenced herein, with market maker counterparties whose electronic trading systems or servers were located in the District of New Jersey, namely, Virtu, G1, BNY Mellon, and Two Sigma.

5

d.      LEVOFF executed the favorable trades involving Company-1 stock in violation of Company-1's Insider Trading Policy and during Company-1 black out periods.

e.      LEVOFF executed trades in furtherance of the scheme from at least as early as April of 2011 through at least as late as April of 2016, realizing profits of approximately $227,000 and avoiding losses of approximately $377,000.

5.      On or about the dates set forth below, in the District of New Jersey and elsewhere, the defendant,

**GENE LEVOFF**,

did willfully, and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails and the facilities of national securities exchanges, use and employ, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons, to wit: by executing and causing others to execute securities transactions in the securities of Company-1 on the basis of material nonpublic information concerning Company-1 in breach of a duty of

6

trust and confidence that was owed directly, indirectly, and derivatively to the issuers of those securities, the shareholders of the issuers, and to other persons who were the source of the material nonpublic information, each such transaction constituting a separate count of this Indictment.

| COUNT | APPROXIMATE DATE | SECURITIES TRANSACTION |
|---|---|---|
| One | July 17, 2015 | Sale of approximately 43,750 shares of Company-1 stock by LEVOFF.  Virtu acted as counterparty to some of these trades. |
| Two | July 17, 2015 | Sale of approximately 8,700 shares of Company-1 stock by LEVOFF.  BNY Mellon acted as counterparty to some of these trades. |
| Three | July 20, 2015 | Sale of approximately 7,000 shares of Company-1 stock by LEVOFF.  G1 and Virtu acted as counterparties to some of these trades. |
| Four | July 21, 2015 | Sale of approximately 17,678 shares of Company-1 stock by LEVOFF.  Virtu and Two Sigma acted as counterparties to some of these trades. |
| Five | October 26, 2015 | Purchase of approximately 10,000 shares of Company-1 stock by LEVOFF.  Two Sigma acted as a counterparty for some of these trades. |
| Six | April 21, 2016 | Sale of approximately 4,009 shares of Company-1 stock by LEVOFF.  G1 acted as a counterparty for some of these trades. |

In violation of Title 15, United States Code, Sections 78j(b) and 78ff, Title 17, Code of Federal Regulations, Section 240.10b-5 and 240.10b5-2, and Title 18, United States Code, Section 2.

## COUNTS SEVEN THROUGH TWELVE
(Wire Fraud)

1.      The allegations contained in paragraphs 1, 2, and 4 of Count One are incorporated as if fully set forth herein.

2.      On or about the dates set forth below, in the District of New Jersey and elsewhere, having devised and intending to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, the defendant,

**GENE LEVOFF**,

did, for the purpose of executing and attempting to execute the scheme and artifice, knowingly and intentionally cause to be transmitted by means of wire, radio, or television communications in interstate and foreign commerce, the following writings, signs, signals, pictures, and sounds, to wit, LEVOFF schemed to defraud Company-1 of confidential information related to Company-1's financial results through deceptive means and then converted that information to his own use, through wire transmissions, for the purpose of executing securities transactions in Company-1 stock.

| COUNT | APPROXIMATE DATE | WIRE COMMUNICATION |
|-------|------------------|--------------------|
| Seven | July 17, 2015 | Sale of approximately 5,000 shares of Company-1 stock by LEVOFF, resulting in interstate wire transmissions with Virtu. |

| Eight | July 20, 2015 | Sale of approximately 2,000 shares of Company-1 stock by LEVOFF, resulting in interstate wire transmissions with G1. |
|---|---|---|
| Nine | July 20, 2015 | Sale of approximately 5,000 shares of Company-1 stock by LEVOFF, resulting in interstate wire transmissions with Virtu. |
| Ten | July 21, 2015 | Sale of approximately 2,000 shares of Company-1 stock by LEVOFF, resulting in interstate wire transmissions with Virtu. |
| Eleven | October 26, 2015 | Purchase of approximately 10,000 shares of Company-1 stock by LEVOFF, resulting in interstate wire transmissions with Two Sigma. |
| Twelve | April 21, 2016 | Sale of approximately 4,009 shares of Company-1 stock by LEVOFF, resulting in interstate wire transmissions with G1. |

In violation of Title 18, United States Code, Sections 1343 and 2.

## FORFEITURE ALLEGATIONS

1.      As the result of committing the offenses constituting specified unlawful activity as defined in 18 U.S.C. § 1956(c)(7), as alleged in Counts One through Seven, inclusive, of this Indictment, defendant GENE LEVOFF shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the conspiracy and securities fraud offenses, and all property traceable thereto.

## SUBSTITUTE ASSETS PROVISION

2.      If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

a.      Cannot be located upon the exercise of due diligence;

b.      Has been transferred or sold to, or deposited with, a third person;

c.      Has been place beyond the jurisdiction of the Court;

d.      Has been substantially diminished in value; or

e.      Has been commingled with other property which cannot be subdivided without difficulty;

It is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as

incorporated by 28 U.S.C. § 2461(c), to seek forfeiture of any other property of

the defendant up to the value of the above forfeitable property.


A TRUE BILL


Grand Jury Foreperson


CRAIG CARPENITO
UNITED STATES ATTORNEY

CASE NUMBER: _19 cr 780 (WJM)_

# United States District Court
## District of New Jersey

UNITED STATES OF AMERICA

v.

GENE LEVOFF

# INDICTMENT FOR

15 U.S.C. §§ 78j(b) and 78ff
17 C.F.R. §§ 240.10b-5 and 240.10b5-2
18 U.S.C. §§ 1343 and 2

A True Bill

_____
Foreperson

CRAIG CARPENITO
UNITED STATES ATTORNEY
FOR THE DISTRICT OF NEW JERSEY

COURTNEY A. HOWARD
DANIEL V. SHAPIRO
ASSISTANT U.S. ATTORNEYS
NEWARK, NEW JERSEY