

**U.S. Department of Justice**

*United States Attorney*
*District of New Jersey*

*970 Broad Street, Suite 700*
*Newark, New Jersey 07102*

May 22, 2020

**BY ECF & EMAIL**

The Honorable William J. Martini
United States District Court
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07101

      Re:    *United States v. Gene Levoff*, Crim. No. 19-780 (WJM)

Dear Judge Martini:

      The United States opposes defendant Gene Levoff's motion to dismiss the indictment in this case, which charges him with six counts of securities fraud and six counts of wire fraud. Dkt. #32. That indictment addresses Levoff's flagrant use of inside information to trade for his own financial benefit while he was a senior corporate lawyer responsible for overseeing compliance with securities laws. *See* Dkt. #16. In response, Levoff launches a Hail Mary pass, arguing that this Court should dismiss the indictment because, according to him, the criminalization of insider trading is unconstitutional. He is wrong, and his motion should be denied.

      Insider trading violates the federal securities laws, including Section 10(b) of the Securities Exchange Act of 1934 ("Section 10(b)") and Securities and Exchange Commission ("SEC") Rule 10b-5 ("Rule 10b-5"). The Supreme Court has held so for decades. *See, e.g.*, *Chiarella v. United States*, 445 U.S. 222, 228 (1980) (reversing conviction due to lack of fiduciary duty but recognizing that a corporate insider who trades using material nonpublic information violates Section 10(b) and Rule 10b-5 because "a relationship of trust and confidence [exists] between the shareholders of a corporation and those insiders who have obtained confidential information by reason of their position with that corporation"); *Dirks v. SEC*, 463 U.S. 646, 662 (1983) (reversing censure while holding that a tippee violates Section 10(b) and Rule 10b-5 where disclosure breaches a fiduciary duty and "the insider personally will benefit, directly or indirectly, from his disclosure"); *United States v. O'Hagan,* 521 U.S. 642, 652 (1997) (upholding insider trading conviction because "a person commits fraud 'in connection with' a securities transaction, and thereby violates § 10b and Rule

10b-5, when he misappropriates confidential information for securities trading purposes, in breach of a duty owed to the source of the information"); *Salman v. United States*, 137 S. Ct. 420, 423 (2016) (affirming insider trading conviction consistent with *Dirks* and *O'Hagan* and reiterating that "Section 10(b) of the Securities Exchange Act of 1934 and the Securities and Exchange Commission's Rule 10b-5 prohibit undisclosed trading on inside corporate information by individuals who are under a duty of trust and confidence that prohibits them from secretly using such information for their personal advantage").

This Court, like all District and Circuit Courts, cannot overrule Supreme Court precedent. The Supreme Court reserves to itself "the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/American Express Inc.*, 490 U.S. 477, 484 (1989). This is true regardless of defendant's assertions that "the precedential weight of many historical insider-trading cases is diminished and a much stricter construction is necessary." Dkt. #32 at 20. Indeed, lower courts may not assume Supreme Court precedent has been overruled unless the Supreme Court says so itself. *See United States v. Extreme Associates*, 431 F.3d 150, 155 (3d Cir. 2005) (citing *Rodriguez de Quijas*, 490 U.S. at 484); *Agostini v. Felton*, 521 U.S. 203, 237 (1997) ("We do not acknowledge, and we do not hold, that other courts should conclude our more recent cases have, by implication, overruled an earlier precedent.").[1] The Third Circuit faithfully follows this rule. *See, e.g., United States v. Johnson*, 899 F.3d 191, 201 (3d Cir. 2018); *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 638 (3d Cir. 2017). So must this District Court.

To be clear, the allegations in the indictment depict insider trading at its most basic. *See Salman*, 137 S. Ct. at 429 (affirming insider trading conviction where "[defendant's] conduct is in the heartland" of prohibited behavior and "precisely" what was "envisioned") (quoting *Dirks*, 463 U.S. at 664) (some quotation marks omitted). Levoff was a senior employee who had access to material nonpublic information in order to fulfill his job responsibilities. *See* Dkt. #16. In violation of his fiduciary duties to his employer and its shareholders, Levoff used that material nonpublic information to trade for his own financial benefit. *Id*. Such conduct is paradigmatic insider trading in violation of Section 10(b) and Rule 10b-5, as recognized by the Supreme Court. *See O'Hagan*, 521 U.S. at 651-52 (under "classical" or "traditional theory" of insider trading "a corporate insider trades in the securities of his corporation on the basis of material nonpublic information," and under "misappropriation theory" a person

---

[1] Similarly, cherry-picked dicta does not accurately reflect the state of Supreme Court precedent. *See Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 363 (2006) ("[W]e are not bound to follow our dicta in a prior case in which the point now at issue was not fully debated.").

"misappropriates confidential information for securities trading purposes, in breach of a duty owed to the source of the information").

While the Supreme Court's precedents interpreting Section 10(b) and Rule 10b-5 by themselves resolve Levoff's motion, he also incorrectly characterizes insider trading as judge-made law. Congress—not the judiciary—passed the Securities Exchange Act of 1934 to "insure honest securities markets and thereby promote investor confidence." *O'Hagan*, 521 U.S. at 658. Congress included Section 10(b), making it unlawful "to use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe." 15 U.S.C. § 78j(b). Thereafter, the SEC—not the judiciary— promulgated Rule 10b-5, forbidding the use "in connection with the purchase or sale of any security" of "any device, scheme, or artifice to defraud" or any other "act, practice, or course of business" that "operates . . . as a fraud or deceit." 17 C.F.R. § 240.10b-5; *see United States v. McGee*, 763 F.3d 304, 310 (3d Cir. 2014) ("The SEC acted on this broad delegation of rulemaking authority [from Congress] by promulgating Rule 10b-5 . . ."). And the SEC—not the judiciary— also promulgated Rules 10b5-1, the so-called "disclose or abstain" rule, and 10b5-2, providing a non-exclusive definition of circumstances in which a person has a duty of trust or confidence for purposes of the misappropriation theory of insider trading. *See* 17 C.F.R. §§ 240.10b5-1 & 240.10b5-2.

Moreover, Congress has repeatedly ratified the Supreme Court's interpretation of insider trading law in modifying Section 10(b) and passing new insider trading legislation consistent with Supreme Court precedent. For example, in 2000, Congress amended Section 10(b) to extend "rules promulgated" and "judicial precedents decided" under Section 10(b) "that prohibit fraud, manipulation, or insider trading" to security-based swap agreements "to the same extent as they apply to securities." Pub. L. 106-554, 114 Stat. 2763A-454 (2000). In 2010, Congress again modified the language of Section 10(b) while maintaining the state of insider trading law.[2] *See* Pub. L. 111-203, 124 Stat. 1761 (2010). And in 2012, Congress enacted the Stop Trading on Congressional Knowledge or "Stock Act," stating that members of Congress "are not exempt from the insider trading prohibitions arising under the securities laws, including section 10(b) . . . and Rule 10b-5" and are prohibited from "using

---

[2] Specifically, Congress removed the words "registered on a national securities exchange" and inserted "other than a government security," struck the words "(as defined in section 206B of the Gramm-Leach-Bliley Act)," and added subsection (c), relating to "effect[ing], accept[ing], or facilitat[ing] a transaction involving the loan or borrowing of securities in contravention of such rules and regulations as the Commission may prescribe." Pub. L. 111-203, 124 Stat. 1761 (2010).

nonpublic information derived from their official positions for personal benefit." Pub. L. No. 112-105, 126 Stat. 291 (2012).

Further, Levoff's motion ignores half of the charges against him—namely, the six counts of wire fraud in the indictment. He devotes a single footnote to the conclusory demand for dismissal of those charges. *See* Dkt. #32 at 3 n.1. Wire fraud, like securities fraud, is a federal crime. *See* 18 U.S.C. § 1343 (prohibiting the use of a wire transmission for executing "any scheme or artifice to defraud" a victim of its property, or to obtain property by false pretenses). Even worse for Levoff, the Supreme Court *unanimously* had "little trouble" holding that trading on "confidential information is not outside the reach of the mail and wire fraud statutes." *Carpenter v. United States,* 484 U.S. 19, 28 (1987) (upholding insider trading wire fraud convictions). After all, "[c]onfidential information has long been recognized as property." *Id.* at 26. And the "concept of 'fraud' includes the act of embezzlement, which is the fraudulent appropriation to one's own use of the money or goods entrusted to one's care by another." *Id.* at 27 (some quotation marks omitted). Accordingly, the wire fraud charges against Levoff, like the securities fraud charges, should proceed.

In sum, because Levoff's arguments fly in the face of binding Supreme Court precedent, this Court should deny his motion without a hearing, argument, or further briefing.[3]

                                        Respectfully submitted,

                                        CRAIG CARPENITO
                                        United States Attorney

                                        */s/ Heather Suchorsky*
        By:   Heather Suchorsky
                 Courtney A. Howard
                 Daniel V. Shapiro
                 Assistant United States Attorneys

cc:    Kevin H. Marino, Esq.
       John D. Tortorella, Esq.
       Wan Cha, Esq.
       *Attorneys for Gene Levoff*

---

[3] Of course, should the Court desire it, the Government can provide supplemental briefing explaining the many other ways in which Levoff's arguments fail.