# MARINO, TORTORELLA & BOYLE, P.C.
### ATTORNEYS AT LAW

KEVIN H. MARINO
JOHN D. TORTORELLA
JOHN A. BOYLE
———
ROSEANN BASSLER DAL PRA*
EREZ J. DAVY*
WAN CHA

437 SOUTHERN BOULEVARD
CHATHAM, NEW JERSEY 07928-1488
TELEPHONE (973) 824-9300
FAX (973) 824-8425
www.khmarino.com

888 SEVENTH AVENUE, 9TH FLOOR
NEW YORK, NEW YORK 10019
TELEPHONE (212) 307-3700
FAX (212) 262-0050
e-mail:kmarino@khmarino.com
*OF COUNSEL

June 3, 2020

**VIA ECF**

Honorable William J. Martini, U.S.D.J.
United States District Court
Martin Luther King, Jr., Federal Building
    & Courthouse
50 Walnut Street
Newark, NJ 07102

    Re:    *United States v. Gene Levoff*, No. 2:19-cr-00780-WJM

Dear Judge Martini:

    Defendant, Gene Levoff ("Levoff"), respectfully submits this reply to the Government's May 22, 2020 response to his motion to dismiss the Indictment.

    The Government doesn't want to respond to Levoff's motion, and doesn't think it has to. Rather than grapple with the serious constitutional issue the motion presents—whether Congress ever properly declared insider trading a federal crime—it simply wishes the issue away, filing a studiously offhand four-page letter more memorable for what it fails to say than for what it does. The Government leads with the conclusory and flatly erroneous declaration that the Supreme Court has already resolved the question presented—apparently sub silentio—in a series of cases decided over the past forty years. Building on that demonstrably false premise, the Government devotes much of its letter to reminding the Court that a district judge cannot overrule the Supreme Court, augments that truism with the unsupportable claim that its wire-fraud charges will carry the day even if its insider-trading counts fail, and closes by hedging its bet in a last-minute footnote. Revealing a gnawing concern that its strategic devil-may-care approach may not sit well with the federal judge responsible for actually deciding the motion, the Government promises to address Levoff's arguments on the merits "should the Court so desire."

    The Court should "so desire." As the Government's cases do not resolve—or even allude to—the issues at the heart of Levoff's motion, it should be required to meet them head on. Specifically, the Government must explain how the SEC fulfilled the obligation delegated it by Congress, why that agency's re-delegation of that obligation was constitutional, where the framers entrusted the courts to create federal crimes, and when the Supreme Court reversed its holding that <u>Chevron</u> deference does not apply to criminal statutes. Levoff made his arguments, and the Government must meet them. That's how it works. And after the Government submits its belated response to the motion, Levoff should have leave to reply. In that way, he will have the last word on his motion and the Court will have the benefit of full briefing, as the rules require.

Honorable William J. Martini, U.S.D.J.
June 3, 2020—Page 2

      Contrary to the Government's conclusory assertion, the United States Supreme Court has never considered the constitutionality of the federal common-law crime of insider trading, which developed in the wake of the SEC's unauthorized redelegation of its rulemaking authority to the federal judiciary. The Government's strategic refusal to provide a meaningful response to Levoff's motion leaves the Court in the untenable position of having to address an important issue of first impression without the substantive input of the Department of Justice. See NASA v. Nelson, 562 U.S. 134, 147 n.10 (2011) ("It is undesirable for [the court] to decide a matter of this importance in a case in which [the court does] not have the benefit of briefing by the parties."). Although the Government casts Levoff's motion as too outlandish to warrant its attention or that of the Court, the infirmities in insider-trading law that Levoff highlights have been the subject of serious scholarly criticism for years. In addition to the Gouraige article discussed at length in Levoff's opening brief,[1] a substantial body of scholarship discussing the constitutional problems inherent in insider-trading law belies the Government's characterization of Levoff's challenge, and underscores its gravity. See Stephen M. Bainbridge, Incorporating State Law Fiduciary Duties into the Federal Insider Trading Prohibition, 52 Wash. & Lee L. Rev. 1189, 1201 n.48, 1202 (1995) ("Even a former SEC solicitor admits that 'modern development of the law of insider trading is a classic example of common law in the federal courts. No statute defines insider trading; no statute expressly makes it unlawful.'"); Roberta S. Karmel, The Law on Insider Trading Lacks Needed Definition, 68 SMU L. Rev. 757, 757 (2015) ("Insider trading is not defined in the federal securities laws. It is, essentially, a common law crime . . . ."); A.C. Pritchard, Justice Lewis F. Powell, Jr., and the Counterrevolution in the Federal Securities Laws, 52 Duke L.J. 841, 930 (2003) ("Justice Powell saw Rule 10b-5's jurisprudence as a species of 'federal common law.'"); Jeanne L. Schroeder, Taking Stock: Insider and Outsider Trading By Congress, 5 Wm. & Mary Bus. L. Rev. 159, 163 (2014) ("[W]e are left with a jurisprudential scandal that insider trading is largely a federal common-law offense."); Jeanne L. Schroeder, Envy and Outsider Trading: The Case of Martha Stewart, 26 Cardozo L. Rev. 2023, 2043 (2005) ("This is the single most disturbing aspect of insider trading law—it is essentially a common law federal crime.").

      Ignoring the ongoing scholarly debate on the subject, the Government contents itself with the bold declaration that the Supreme Court resolved Levoff's constitutional challenge to insider-trading law in Chiarella v. United States, 445 U.S. 222 (1980); Dirks v. SEC, 463 U.S. 646 (1983); United States v. O'Hagan, 521 U.S. 642 (1997); and Salman v. United States, 137 S. Ct. 420 (2016), and that granting Levoff's motion would therefore require this Court to overrule the Supreme Court. Not so. None of those cases—not Chiarella, Dirks or O'Hagan, addressed in Levoff's moving brief, nor Salman, discussed below—involved a challenge to insider trading as a federal common-law crime, or considered the SEC's unlawful redelegation of its rulemaking authority to the judiciary. It is well settled that decisions that assume but do not decide the validity of underlying principles of law are not binding in cases that actually raise such issues. See United States v. Verdugo-Urquidez, 494 U.S. 259, 272 (1990) ("The Court often grants certiorari to decide particular legal issues while assuming without deciding the validity of antecedent propositions, . . . and such assumptions—even on jurisdictional issues—are not binding in future cases that directly raise the questions."); Hagans v. Lavine, 415 U.S. 528, 533 n.5 (1974) ("[T]his Court has never

---

[1] Hervé Gouraige, Do Federal Courts Have Constitutional Authority to Adjudicate Criminal Insider-Trading Cases?, 69 Rutgers L. Rev. 47 (2016).

Honorable William J. Martini, U.S.D.J.
June 3, 2020—Page 3

considered itself bound when a subsequent case finally brings the jurisdictional issue before us."); United States v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 38 (1952) (Where an argument was not "raised in briefs . . . nor discussed in the opinion of the Court[,] . . . the case is not binding precedent on this point"). Moreover, no court anticipates constitutional issues that are not raised in the case before it. Communist Party of United States v. Subversive Activities Control Bd., 367 U.S. 1, 71–72 (1961) ("No rule of practice . . . is more well settled than 'never to anticipate a question of constitutional law in advance of the necessity of deciding it'" (citation omitted)). Finally, while the Government warns that granting Levoff's motion would overrule Supreme Court precedent, it fails to address the Supreme Court's foundational ruling in United States v. Hudson & Goodwin, 11 U.S. (7 Cranch) 32, 33–34 (1812), whose holding—that courts lack jurisdiction under Rule 12(b)(2) to adjudicate federal common-law crimes—it would have this Court ignore.

Consistent with its 30,000-foot approach to Levoff's motion, the Government labels his conduct "insider trading at its most basic," but fails to supply the statutory definition of the crime— a curious tactic if its proposition is indeed so obvious. Rather than citing Section 10(b) or Rule 10b-5 for this assertion, the Government cites Salman—but selectively fails to note that it invoked judge-made decisions for the definition of insider trading, not the statutory or regulatory text.[2] The Government goes on to accuse Levoff of "incorrectly characteriz[ing] insider trading as judge-made law" because Congress passed Section 10(b) and the SEC passed Rules 10b-5, 10b5-1, and 10b5-2. But as Levoff explained in his moving brief,[3] neither that statute nor those regulations, or any combination of them, defines insider trading. The Government also argues that Congress "ratified" the Supreme Court's interpretation of insider trading through various amendments and the STOCK Act, all of which reference the common law of insider trading in the abstract, but none of which textually defines insider trading nor even commits to a particular judge-made definition.[4]

---

[2] The Government's parenthetical explanation of Salman reads "'[defendant's] conduct is in the heartland' of prohibited behavior and 'precisely' what was 'envisioned.'" (Gov't's Letter, at 2 (quoting Salman).) Unaltered, the Salman Court stated, "Salman's conduct is in the heartland *of Dirks's rule* concerning gifts. . . . this case involves 'precisely the gift of confidential information to a trading relative *that Dirks* envisioned.'" 137 S. Ct. at 429 (emphasis added). By omitting that the conduct was in the *heartland of "Dirks"*—a judicial decision and not the statute or regulation— the Supreme Court held that the law of criminal insider trading is not unconstitutionally vague or ambiguous such that the Rule of Lenity would apply because insider trading is clearly *defined in judicial opinions*. See id. at 428–29. In other words, Salman relied on judicial precedent without questioning its statutory or regulatory underpinnings, which were not then at issue.

[3] Levoff's moving brief also anticipated the Government's reliance on United States v. McGee, 763 F.3d 304 (3d Cir. 2014), and addresses McGee throughout.

[4] The Government concedes that Section 10(b) does not contain any definition by resorting to Congress's supposed "ratification" of the common-law definition of insider trading. But Congress did no such thing—it merely extended the scope of insider-trading law in its common-law form to security-based swap agreements "to the same extent as they apply to securities." Moreover, Section 10(b) fails to identify a specific definition (or a specific court decision), and instead acknowledges the judiciary's continued ability to change that definition as common law. The

Honorable William J. Martini, U.S.D.J.
June 3, 2020—Page 4

      Beyond its cursory opposition to Levoff's core insider-trading argument, the Government cites Carpenter v. United States, 484 U.S. 19 (1987), for the proposition that its wire fraud charges would survive regardless of the dismissal of its insider-trading counts because "the concept of 'fraud' includes the act of embezzlement." (Gov't Letter, at 4 (quoting Carpenter).) According to the Government, because Carpenter unanimously upheld a wire-fraud conviction while splitting the vote on the misappropriation theory of insider trading, Levoff's wire fraud charges should similarly survive the invalidation of the Indictment's insider trading charges. (Gov't Letter, at 4.) The Government is mistaken. Carpenter does not stand for the proposition that a wire-fraud charge premised entirely on an insider-trading charge—as Levoff's is in this case—could survive the invalidation of the predicate insider-trading allegation.[5] It could not. See United States v. Chestman, 947 F.2d 551, 571 (2d Cir. 1991) (en banc) (reversing 10b-5 and mail fraud convictions because "[t]he fortunes of Chestman's mail fraud convictions are tied closely to his securities fraud conviction"); United States v. Joon Kim, 184 F. Supp. 2d 1006, 1015 (N.D. Cal. 2002) (dismissing wire fraud indictment because "[t]he alleged fraud underlying the securities fraud charges [which were dismissed] also serves as the basis for the wire fraud charge"). Indeed, a court in this District previously adopted the Government's view that violation of the mail and wire fraud statutes depends on the 10b-5 charge when premised on the same conduct. See United States v. Eisenberg, 773 F. Supp. 662, 720–21 (D.N.J. 1991) (agreeing with "[t]he Government['s] [position] . . . that 'because these [wire fraud and mail fraud] schemes are basically securities fraud schemes, . . . the critical inquiry . . . is to determine whether they violate Section 10(b) and Rule 10b-5.'").

      In sum, the Government has failed to meaningfully engage with Levoff's insider-trading argument, on which the validity of its Indictment turns. Accordingly, Levoff respectfully requests that the Court take the Government up on its offer to make a supplemental submission actually addressing Levoff's motion, and grant Levoff leave to reply to that submission before ruling on it. The Government's strategic insouciance notwithstanding, the issue this motion raises is simply too important to be decided on less than comprehensive briefing.

      Thank you for your consideration of this submission.

                                            Respectfully,

                                            Kevin H. Marino

cc:    Courtney A. Howard, AUSA
        Daniel V. Shapiro, AUSA
        Heather Suchorsky, AUSA

---

STOCK Act does not define insider trading and merely states that government employees are not exempt from insider trading law. Pub. L. No. 112-105 § 9(b), 126 Stat. 291 (2012).

[5] The Government fails to acknowledge that ten years later, the Court in United States v. O'Hagan used Carpenter's mail-and-wire-fraud definition of "embezzlement" to bring misappropriation within the definition of insider trading, linking the two definitions whose prior differences accounted for the disparate ruling in Carpenter. See O'Hagan, 521 U.S. 642, 654 (1997).