# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **UNITED STATES,**<br><br>    v.<br><br>**GENE LEVOFF.** | 19-cr-780<br><br>OPINION |

## WILLIAM J. MARTINI, U.S.D.J.:

This matter arises out of Defendant Gene Levoff's alleged insider trading scheme. The matter comes before the Court on Defendant's Motion to Dismiss the Indictment. ECF No. 32. As discussed in more detail below, the motion is **DENIED**.

### I.    BACKGROUND

According to the Criminal Complaint, from 2008-2018, Defendant Gene Levoff ("Levoff") was an attorney at a large technology company ("Employer") listed on the NASDAQ Stock Exchange. From 2008-2013, Levoff was director of Corporate Law, before being promoted to Senior Director. Levoff also served as Corporate Secretary and was a member (and co-chairperson) of the Disclosure Committee. As a member of the Disclosure Committee, Levoff had early access to Employer's draft U.S. Securities Commission ("SEC") filings. Compl., ECF No. 1.

The Government alleges that from 2011-2016, Levoff orchestrated an insider trading scheme to defraud Employer and its shareholders. Purportedly based on non-public information he received as a member of the Disclosure Committee, Levoff traded Employer's securities shortly before its results became public. The trades allegedly allowed Levoff to realize profits of $227,000 and to avoid losses of $377,000. Indictment, ECF No. 16.

On October 24, 2019, a federal grand jury returned a twelve-count indictment (the "Indictment") against Levoff, charging him with securities fraud for violations of 15 U.S.C. § 78j & 78ff; 17 C.F.R. §§ 240.10b-5 & 240.10b5-2; and 18 U.S.C. § 2 (Counts 1-6) and wire fraud for violations of 18 U.S.C. §§ 1343 & 2 (Counts 7-12). On April 27, 2020, Levoff moved to dismiss all counts of the Indictment, arguing that criminal insider trading laws are unconstitutional. Mot. at 3.

### II.   STANDARD OF REVIEW

When evaluating a Rule 12 motion to dismiss, a district court must accept as true the factual allegations set forth in an indictment. *United States v. Huet*, 665 F.3d 588, 595 (3d Cir. 2012). Thus, a district court's review is limited to determining whether, assuming all of the facts as true, a jury could find that the defendant committed the offense for which he was charged. *Id.* at 596. Further, "a charging document fails to state an offense if the specific facts alleged in the charging document fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation." *United States v. Panarella*, 277 F.3d 678, 685 (3d Cir. 2002).

### III.     DISCUSSION

Levoff argues that because there is no statute that explicitly criminalizes insider trading, the Indictment must be dismissed. The Government responds that Levoff's alleged conduct violates the Securities and Exchange Act of 1934 ("the Act") and SEC regulations as a "classical" case of insider trading. The Government is correct.

#### A.     The Allegations Constitute a "Classical" Insider Trading Violation

15 U.S.C. § 78j prohibits the use of "any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

Under the "classical theory," insider trading constitutes a deceptive trade practice prohibited by Section 78j. Courts have interpreted "manipulative or deceptive device" to include trading by a corporate insider based on material, nonpublic information. *United States v. O'Hagan,* 521 U.S. 642, 651-52 (1997). Given the fiduciary relationship between corporate insiders—including corporate officers and attorneys—and shareholders, insiders have a duty to either disclose material information, or abstain from trading the corporation's securities. *Chiarella v. United States*, 445 U.S. 222, 228-29 (1980). Furthermore, contrary to Levoff's assertions, the SEC *did* promulgate a rule barring classical insider trading. Under 17 C.F.R. § 240.10b5–1(a):

> The manipulative and deceptive devices prohibited by . . . 15 U.S.C. § 78j[] and § 240.10b-5 thereunder include . . . the purchase or sale of a security of any issuer, on the basis of material nonpublic information about that security or issuer, in breach of a duty of trust or confidence that is owed directly . . . to the issuer of that security or the shareholders of that issuer . . . .

Levoff's alleged conduct fits squarely within the SEC's promulgated definition of "manipulative and deceptive devices." *See id.* As a member of Employer's Disclosure Committee and an attorney for Employer, Levoff had access to material, nonpublic information, and a duty not to misuse it. *See Chiarella*, 445 U.S. at 228-29. He allegedly used that material, nonpublic information to make trades that allowed him to realize profits and avoid losses. *See* 17 C.F.R. § 240.10b5–1(b) (defining "trading on the basis of" as awareness of material, non-public information when trading). Furthermore, he allegedly traded while specifically subject to Employer's blackout periods. *See United States v. Heron*, 323 F. App'x 150, 156 (3d Cir. 2009) (finding trading pattern during blackout period "might be sufficient for a jury to infer guilt" even without evidence of insider knowledge). In doing so, he breached his "duty of trust or confidence" to Employer. 17 C.F.R. § 240.10b5–1(a). Accordingly, Levoff's alleged conduct is within "the scope of the relevant criminal statute, as a matter of statutory interpretation." *Panarella*, 277 F.3d at 685.

#### B.     Insider Trading Is Not a Common-Law Crime

Levoff characterizes insider trading law as "federal common-law crimes," and thus unconstitutional. Levoff is incorrect. Congress passed the Act "in order to protect interstate commerce. . . and to insure the maintenance of fair and honest markets in such transactions." 15 U.S.C. § 78b. The Act established the SEC as the rulemaking body for securities

regulation and gave it the authority to promulgate rules related to securities fraud and transactions. 15 U.S.C. § 78d. Thereafter, the SEC promulgated rules directly applicable to Levoff's alleged conduct. *Compare* 17 C.F.R. § 240.10b5–1 (defining terms in 15 U.S.C. § 78j and 15 C.F.R. § 240.10b-5), *with* Mot. at 1-2 ("Had the SEC performed that legislative function . . . to promulgate regulations that targeted insider trading as a specific manipulative practice or deceptive device—those regulations would have the force of criminal law.").

Furthermore, since its passage, Congress has repeatedly ratified interpretations of Section 10(b) to include Supreme Court precedent on insider trading. In 2000, Congress modified Section 10(b) to extend "rules promulgated and judicial precedents decided" under Section 10(b) "that prohibit fraud, manipulation, or insider trading" to security-based agreements "to the same extent as they apply to securities." 15 U.S.C. § 78j. Congress has also codified the penalties for violation of SEC regulations, including monetary fines and/or imprisonment. *See* 15 U.S.C. § 78ff. And as discussed above, the SEC promulgated specific rules further clarifying the statutes. The fact that judicial precedents help define the contours of what does, and does not, fall within the statutory and regulatory terms is not unique to insider trading. Instead, it is completely typical. *See Carter v. United States*, 530 U.S. 255, 266-270 (2000) (discussing "extortion," "robbery," and "larceny" with reference to common law meanings and outcomes of various interpretations).

### C. <u>Insider Trading Laws Do Not Violate the Non-Delegation Doctrine</u>

The non-delegation doctrine, based in Constitutional principle of separation of powers, prohibits Congress from delegating its legislative power to a different branch. *See Mistretta v. United* States, 488 U.S. 361, 371-72 (1989). However, the non-delegation doctrine does not completely preclude Congress from delegating rulemaking powers to administrative agencies. *See id.* at 372. Assistance of such agencies requires Congress to "lay down by legislative act an intelligible principle to which the person or body authorize[d] to [exercise the delegated authority] is directed to conform." *Id.* (citation omitted). The Supreme Court has repeatedly found that the direction supplied by Congress can be broad or general. *See Gundy v. United* States, 139 S. Ct. 2116, 2129 (2019); *Mistretta*, 488 U.S. at 372. Directives for agencies to regulate in the "public interest"; "fair and equitable" prices; "just and reasonable" rates, and "requisite to protect the public health" have passed constitutional muster. *See, e.g.*, Gundy, 139 S. Ct. at 2129.

Here, Levoff argues the charges are beyond the scope of criminal law because the SEC's promulgation of rules outlawing insider trading is outside Congress's delegation to the SEC. He is incorrect. As stated above, the Act was passed by Congress to "insure the maintenance of fair and honest markets in [securities] transactions." 15 U.S.C. § 78b. And Congress delegated power to the SEC to enact securities regulations under the Act toward that goal. 15 U.S.C. § 78b; *United States v. McGee*, 763 F.3d 304, 315 (3d Cir. 2014). The SEC promulgated rule 10b-5, which makes it unlawful "to employ any device, scheme, or artifice to defraud. . . to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5. Further, the SEC promulgated 10b5-1, which defines "manipulative and deceptive devices" to include "the purchase or sale of a security of any issuer, on the basis of material nonpublic information about that security or issuer, in breach

3

of a duty of trust or confidence that is owed directly, indirectly, or derivatively, to the issuer of that security." Though the term "insider trading" is not included, the regulations outline the nature of the illegal behavior; trading based on material, nonpublic information. Levoff is accused of participating in this exact behavior.

### D. Chevron Deference

Levoff argues that because the Supreme Court has recently rejected *Chevron* deference for criminal statutes, "only judicial opinions focused on the text of the statute itself should govern Levoff's case." Mot. at 22 (citing *United States v. Apel*, 571 U.S. 359, 369 (2014)). And, Levoff continues, without agency deference, the rule of lenity requires the Court to interpret Section 78j in Levoff's favor. *Id.* at 23.

Accepting Levoff's premise *arguendo*, the result remains the same. Levoff quotes Justice Scalia's denial of *certiorari* in *Whitman v. United States* in support of his argument. But as Justice Scalia noted, "[u]ndoubtedly Congress may make it a crime to violate a regulation." *Whitman v. United States*, 574 U.S. 1003 (2014) (Scalia, J.). Thus, Congress "can make a law to delegate a power to determine some fact or state of things upon which the law makes or intends to make its own action depend." *United States v. Grimaud*, 220 U.S. 506, 520 (1911) (cited by *Whitman*, 574 U.S. 1003). Congress did so in enacting 15 U.S.C. § 78j (prohibiting use of "any manipulative or deceptive device or contrivance in contravention *of such rules and regulations as the Commission may prescribe*" (emphasis added)). Thereafter, the SEC enacted several regulations which prohibit Levoff's alleged conduct. *See* 17 C.F.R. §§ 240.10b-5-1; 240.10b-5-1; 240.10b-5-2.

As to lenity, post-*Apel*, the Supreme Court rejected a rule of lenity argument in a case involving "tipper" securities fraud liability. *See Salman v. United States*, 137 S. Ct. 420, 429 (2016). The Court found the rule of lenity inapplicable because the tipper-defendant failed to show a "grievous ambiguity or uncertainty that would trigger the rule's application." *Id.* (citation omitted). Here, Levoff similarly fails to raise a sufficient ambiguity or uncertainty. His alleged conduct is "classical" insider trading. *See supra* Part III.A. As the gift-giving tipper's conviction in *Salman* passed rule-of-lenity muster, so does Levoff's alleged conduct.

### E. Wire Fraud Charges Against Levoff Remain

Levoff argues that the wire fraud charges (Counts 7-12) are derivative of the securities fraud charges (Counts 1-6), and thus should thus be dismissed for the same reasons. As the Court will not dismiss the securities fraud charges, it will not derivatively dismiss the wire fraud charges.

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss the Indictment, ECF No. 32, is **DENIED**. An appropriate order follows.

*/s/ William J. Martini*

**Date: August 12, 2020**          **WILLIAM J. MARTINI, U.S.D.J.**